## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

—————————————————————
                                          )
**MATTHEW J. HIGHT,**                     )
                                          )
    **Plaintiff,**                       )
                                          )
    **v.**                              )      **Case No. 19-cv-02094 (APM)**
                                          )
**UNITED STATES DEPARTMENT**              )
**OF HOMELAND SECURITY et al.,**          )
                                          )
    **Defendants,**                      )
                                          )
**ST. LAWRENCE SEAWAY PILOTS**            )
**ASSOCIATION,**                          )
                                          )
    **Defendant-Intervenor.**            )
—————————————————————     )

## <u>MEMORANDUM OPINION</u>

### I.    INTRODUCTION

Plaintiff Captain Matthew Hight brought this suit after the Coast Guard denied his request to take the written examination necessary to become a registered pilot under the Great Lakes Pilotage Act.   He alleges that the Coast Guard's denial violates the Administrative Procedure Act ("APA") and various provisions of the Constitution.   After the St. Lawrence Seaway Pilots Association intervened as a defendant, the parties and intervenor filed cross-motions for summary judgment, which are now before the court.   For the reasons that follow, the court grants summary judgment in Plaintiff's favor as to two of his APA claims, does not reach his constitutional claims, and remands the case back to the Coast Guard for further proceedings.

II.     **BACKGROUND**

A.      **Statutory Background**

The Great Lakes Pilotage Act of 1960 (the "Act") obligates all foreign shipping vessels, as well as U.S. vessels engaged in foreign trade, to use either American or Canadian registered pilots to navigate the American portion of the Great Lakes and the St. Lawrence Seaway.   46 U.S.C. § 9302(a)(1).   The Act permits the Coast Guard to authorize the formation of and to regulate "pilotage pools" formed "by a voluntary association of United States registered pilots to provide for efficient dispatching of vessels and rendering of pilotage services."   *Id.* §§ 9304(a)–(b).   As a result of this statutory scheme, pilots on the Great Lakes and the St. Lawrence Seaway are organized into private associations certified by the Coast Guard.   *See* 85 Fed. Reg. 20,088, 20,089 (Apr. 9, 2020).   They operate in three geographically distinct pilotage districts.   *Id.*   Relevant to this case is District One, which covers all the U.S. waters of the St. Lawrence River and Lake Ontario.   *Id.*   Defendant-Intervenor St. Lawrence Seaway Pilots Association is the certified pilotage association for District One.   *Id.*

The Coast Guard is responsible for licensing and registering pilots as well as establishing the conditions of a pilot's service.   46 U.S.C. §§ 9303(a)–(e).   Becoming a licensed and registered pilot involves multiple steps and years of training.   A person must first achieve the status of "Applicant Pilot."   46 C.F.R. § 401.220(b).   An Applicant Pilot is defined as:

> a person who holds a license or merchant mariner credential endorsed as a master, mate, or pilot issued under the authority of the provisions of Title 52 of the Revised Statutes, and has acquired at least twenty-four months licensed service or comparable experience on vessels or integrated tugs and tows, of 4,000 gross tons or over, operating on the Great Lakes or oceans, and who has applied for registration . . . .

*Id.* § 401.110(a)(12).   The regulations allow for a shorter experiential period for persons with prior "ocean service."   *Id.*   Such persons need only "have obtained at least six months of licensed service or comparable experience on the Great Lakes" before they can achieve Applicant Pilot status.   *Id.*

Applicant Pilot status is but a way station on the road to achieving full registration as a pilot.   The Coast Guard's regulations set forth three requirements for an Applicant Pilot to secure full registration.   First, the Applicant Pilot must have "completed the minimum number of trips prescribed by the Commandant over the waters for which application is made on oceangoing vessels, in company with a Registered Pilot, within 1 year of date of application."   *Id.* § 401.220(b).   The court refers to this as the "Minimum Trips Requirement."   Second, the Applicant Pilot must have "completed a course of instruction for Applicant Pilots prescribed by the association authorized to establish the pilotage pool."   *Id.*   And, third, the Applicant Pilot must have "satisfactorily completed a written examination prescribed by the Commandant, evidencing his knowledge and understanding of the Great Lakes Pilotage Regulations, Rules and Orders; the Memorandum of Arrangements, Great Lakes Pilotage, between the United States and Canada; and other related matters including the working rules and operating procedures of his district."   *Id.*

The regulations also contain a fourth criterion, which is at the center of the parties' dispute. It provides that "[t]he Pilot Association authorized to establish a pool in which an Applicant Pilot has qualified for registration under [46 C.F.R. § 401.220(b)] shall submit to the [Coast Guard] in writing its recommendations together with its reasons for the registration of the Applicant."   *Id.* § 401.220(c).   As noted below, Defendants take the view that a positive recommendation from the Pilot Association under subsection (c) is a mandatory condition to registration, on par with the

three conditions set forth in subsection (b).   Plaintiff contests this interpretation.   In any event, if successful, an Applicant Pilot is issued a Certificate of Registration valid for a term lasting no longer than five years.   *See id.* § 401.220(d).

The regulations also permit the Coast Guard, when "necessary to assure adequate and efficient pilotage service," to issue a temporary certificate of registration for a period of less than one year.   *Id.* § 401.220(e).

### B.      Factual Background

Plaintiff Captain Matthew Hight is an experienced professional mariner.   He submitted his application for registration as a pilot in District One to the Coast Guard on July 2, 2015.   A.R. at 58.[1]   On August 17, 2015, he began his training with Defendant-Intervenor St. Lawrence Seaway Pilots Association (the "Association").   *Id.* at 9.   On December 22, 2015, the Coast Guard granted Plaintiff the status of Applicant Pilot.   *Id.* at 8.   From 2016 to early 2018, Plaintiff progressed through the Association's training program and was issued multiple temporary certificates of registration.   *See id.* at 9, 60.

On March 6, 2018, John Boyce, President of the Association, sent the Coast Guard Plaintiff's year-end performance report for 2017.   *Id.* at 62–63.   The report addressed Plaintiff's involvement in two incidents.   The first incident took place on or about June 11, 2017, and involved a tugboat that suffered damage while assisting Plaintiff's vessel in undocking.   *Id.* at 62.   According to Boyce, Plaintiff did not report the incident to the relevant authorities.   *Id.*   The second incident occurred on or about December 17, 2017, and involved Plaintiff's use of profanity while navigating amid confusion about the mooring arrangements for his vessel.   *Id.*   As a result of the incidents, the Association declined to recommend that Plaintiff continue as a "Temporarily

---

[1] The Administrative Record ("A.R.") can be found in the two-volume Joint Appendix filed at ECF Nos. 76 and 76-1.

4

Registered Pilot and Applicant Pilot in Training on all District 1 waters for the 2018 season." *Id.*
at 63.   Later that day, Todd Haviland, Director of Great Lakes Pilotage, emailed Boyce to concur
with the Association's recommendation.   *Id.* at 64.   As a consequence, Plaintiff was prevented
from piloting vessels within District One.   *Id.* at 97.   After a series of emails with the Coast Guard
seeking reinstatement and explaining his actions, on April 10, 2018, for reasons not clear from the
record, the Coast Guard issued Plaintiff a "Temporary Certificate of Registration for the 2018
navigation season."   *Id.* at 283.

Also on April 10, 2018, Plaintiff formally requested that the Coast Guard permit him to
take the written examination.   *Id.* at 103.   He further asked that, upon successful completion of
the examination, the Coast Guard issue him a full five-year registration certification and direct the
Association to restore him to the District One "tour de role"—that is, the list of pilots who are
rotated onto international shipping trips.   *Id.*   On June 27, 2018, the Association's counsel sent a
letter to the Coast Guard providing supplemental information regarding Plaintiff's tenure as an
Applicant Pilot in training and the Association's conclusion that it would not allow Plaintiff to
continue in its program.   *See id.* at 200–09.

On July 18, 2018, Rajiv Khandpur, the Coast Guard's Chief of Waterways and Ocean
Policy, formally denied Plaintiff's request to sit for the written examination.   *Id.* at 6–7.
Khandpur offered two reasons for his decision.   First, seemingly referring to the Minimum Trips
Requirement, he explained that the Coast Guard could not "corroborate the information that
[Plaintiff] provided with that provided to us by the [Association]," and that the information
Plaintiff provided suggested that the trips he had taken were either in furtherance of becoming an
Applicant Pilot (as opposed to a registered pilot) or were not qualifying trips toward the Minimum
Trips Requirement.   *Id.* at 6.   Second, Khandpur referenced the absence of a positive

recommendation from the Association.  *Id.*  He then concluded: "We will not administer the written examination unless these two requirements are satisfied."  *Id.*

Plaintiff appealed, and on October 19, 2018, the Coast Guard affirmed Khandpur's decision.  *See id.* at 1–5.  Mike Emerson, Director of Marine Transportation Systems, concluded that Plaintiff had not satisfied the Minimum Trips Requirement of five round trips since becoming an Applicant Pilot in December 2015.  *Id.* at 4.  Like Khandpur, Emerson also noted the absence of a positive recommendation from the Association.  *Id.*  Emerson explained:

> The Director has always proctored the examination after having received the recommendation by the association that oversaw the applicant's training, and never beforehand.  Because this examination requires travel by the applicant pilot, by Coast Guard personnel, or both, it simply does not make sense to provide an examination to an applicant pilot who may not ultimately complete the association's specified training, which is [a] long-established prerequisite to full registration.

*Id.*  The Coast Guard's decision on appeal constituted a final agency action.  *Id.* at 1; *see* 5 U.S.C. § 704.

### C.    Procedural Background

On March 6, 2019, Plaintiff filed this action against the Federal Defendants[2] in the United States District Court for the Southern District of Florida, challenging the Coast Guard's decision.  Compl., ECF No. 1.  He claims that the Coast Guard violated the APA by improperly interpreting the Minimum Trips Requirement (Count II), *id.* ¶¶ 234–246; requiring a positive recommendation from the Association to take the written examination and to become a registered pilot (Count III), *id.* ¶¶ 247–254; and requiring Plaintiff be a member of the Association to work as a registered pilot (Count IV), *id.* ¶¶ 255–264.  Additionally, Plaintiff alleges that the Coast

---

[2] The Federal Defendants include the U.S. Department of Homeland Security, the U.S. Coast Guard, and Admiral Karl L. Schultz, in his official capacity as Commandant of the U.S. Coast Guard.

Guard deprived him of procedural due process in evaluating his request to take the written examination (Count I), *id.* ¶¶ 222–233, and improperly delegated its licensing authority to the Association in violation of the Due Process Clause (Count V), the Vesting Clause of Article I (Count VI), and the Vesting Clause of Article II (Count VII), *id.* ¶¶ 265–282.  Finally, mirroring his APA claim in Count IV, Plaintiff alleges that the Coast Guard violated his First Amendment rights by requiring him to join the Association to work as a registered pilot (Count VIII).  *Id.* ¶¶ 283–294.

On May 23, 2019, the Association successfully moved to intervene as a defendant.  Mot. to Intervene in Supp. of Defs. & Incorporated Mem. of Law, ECF No. 27.  On June 24, 2019, the case was transferred to this court.  Order Granting Defs.' Mot. to Transfer Venue, ECF No. 33.  Now, both parties and the Association have filed cross-motions for summary judgment on all counts in the Complaint.  Pl.'s Mot. for Summ. J. & Mem. of P. & A., ECF No. 59 [hereinafter Pl.'s Mot.]; Defs.' Cross-Mot. for Summ. J., ECF No. 65 [hereinafter Defs.' Mot.]; Cross-Mot. of Def.-Intervenor for Summ. J., ECF No. 64 [hereinafter Intervenor Mot.].  Additionally, Plaintiff and the Association have moved for leave to file declarations in support of their respective cross-motions.  Pl.'s Mot. for Leave to File Decl. in Supp. of Summ. J., ECF No. 58; Conditional Cross-Mot. of Association to Allow Filing of Responsive Decl., ECF No. 63.

## III.   LEGAL STANDARD

Because it does not reach Plaintiff's constitutional law claims, the court discusses only the legal principles applicable to Plaintiff's APA claims.  The APA requires a reviewing court to "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).  A claim under the APA presents questions of law that may be

considered on a motion for summary judgment.  *Marshall Cty. Health Care Auth. v. Shalala*, 988 F.2d 1221, 1226 (D.C. Cir. 1993).

In cases that involve the review of final agency action under the APA, Rule 56 of the Federal Rules of Civil Procedure, the ordinary standard for summary judgment, does not apply.  *See Stuttering Found. of Am. v. Springer*, 498 F. Supp. 2d 203, 207 (D.D.C. 2007).  Instead, the district court "sits as an appellate tribunal," and "the entire case on review is a question of law."  *Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1083 (D.C. Cir. 2001) (internal quotation marks omitted).  The court's review is limited to the administrative record, and "its role is limited to determining whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did."  *Philip Morris USA Inc. v. U.S. Food & Drug Admin.*, 202 F. Supp. 3d 31, 45 (D.D.C. 2016) (cleaned up).

## IV.   DISCUSSION

Plaintiff makes two primary claims under the APA.  First, he argues that the Coast Guard rejected his request to sit for the written examination based on a misreading of the Minimum Trips Requirement.  Pl.'s Mot. at 14–24.  Second, he contends that the Coast Guard's insistence that a positive recommendation from the relevant Pilot Association is a precondition to taking the written examination likewise misconstrues the governing regulations.  *Id.* at 42–44.  The court addresses each claim in turn.

### A.   The Minimum Trips Requirement

Pursuant to the Minimum Trips Requirement, "[r]egistration of pilots shall be made from among those Applicant Pilots who have . . . completed the minimum number of trips prescribed by the Commandant over the waters for which application is made on oceangoing vessels, in company with a Registered Pilot, within 1 year of date of application."  46 C.F.R.

§ 401.220(b)(1).   In Plaintiff's case, "a minimum of five round trips are required."  *Id.*
§ 402.220(a)(1); *see also* Pl.'s Mot. at 14.   The Federal Defendants and the Association take the
position that Plaintiff did not satisfy the Minimum Trips Requirement because he had not
completed the requisite five round trips *after* December 22, 2015—the date the Coast Guard
approved Plaintiff as an Applicant Pilot.   Defs.' Mot. at 9–11; Intervenor Mot., Mem. of P. & A.
in Supp. of Intervenor Mot., ECF No. 64-1 [hereinafter Intervenor Mem.], at 13–15; *see also* A.R.
at 4.   Before that point, they say, Plaintiff was merely an "Applicant Trainee" and the trips taken
under that designation do not count toward the Minimum Trips Requirement.   A.R. at 4; *see* 46
C.F.R § 401.110(a)(13).   Thus, under the Federal Defendants and the Association's reading of the
regulations, an applicant for registration must be an Applicant Pilot *before* he can begin accruing
any round trips that count toward the Minimum Trips Requirement.   Defs.' Mot. at 9–11;
Intervenor Mem. at 13–15; *see also* A.R. at 4.

Not so, says Plaintiff.   On his reading, the regulations require only that the five round trips
be accrued within a year of the date of application—in his case, July 2, 2015.   Pl.'s Mot. at 15–
19.   According to Plaintiff, whether the applicant begins accruing the trips before he is approved
as an Applicant Pilot or after is irrelevant.   *Id.* at 17 ("The distinction between 'Applicant
Trainees' and 'Applicant Pilot' is immaterial as it pertains to acquiring trips.").   The court agrees
with Plaintiff.

Courts will defer to an agency's interpretation of its own regulations, but only under certain
circumstances.   At the outset, the court must "exhaust all the 'traditional tools' of construction" to
discern the meaning of the regulation on its own.   *Kisor v. Wilkie*, 588 U.S. ___, ___, 139 S. Ct.
2400, 2415 (2019).   "To make that effort, a court must carefully consider the text, structure,
history, and purpose of a regulation."   *Id.* (cleaned up).   Even "hard interpretative conundrums . . .

relating to complex rules[] can often be solved" without resorting to deference. *Id*. If, after such an analysis, "genuine ambiguity" remains, the court then considers whether the agency's proffered interpretation is reasonable. *See id*. In other words, the court asks whether the agency's interpretation "come[s] within the zone of ambiguity the court has identified after employing all its interpretative tools." *Id*. at 2416. If the answer is yes, the court must further find that "the character and context of the agency interpretation entitles it to controlling weight." *Id*. Only then should the court defer to the agency.

Here, the court need not move past the first step, because the language of the regulations is plain. For a trip to count toward the Minimum Trips Requirement, it must be (1) "over the waters for which the application is made"; (2) on an oceangoing vessel; (3) "in company with a Registered Pilot"; and (4) "within 1 year of the date of application." 46 C.F.R. § 401.220(b)(1). Only the fourth prerequisite is at issue here. It addresses when qualifying trips must occur to count toward the Minimum Trips Requirement. The kickoff date for qualifying trips is the "date of application." No party contends that the term "application" means anything other than the initial "Application for Registration as United States Registered Pilot." *See* Pl.'s Mot. at 16; Defs.' Mot. at 9–11; Intervenor Mem. at 13–15. Plaintiff filed his Application on July 2, 2015. A.R. at 58. So, if an otherwise qualifying trip took place within one year of July 2, 2015, it should count toward the Minimum Trips Requirement, regardless of whether an applicant is classified as an Applicant Pilot or an Applicant Trainee at the time.

The Coast Guard eschewed this straightforward reading of its own regulations when it assessed Plaintiff's request to take the examination and instead counted only those trips taken *after* December 22, 2015—the date the Coast Guard approved Plaintiff as an Applicant Pilot. A.R. at 1–5. The Coast Guard offered no rationale for this atextual reading during the administrative

proceedings. The Federal Defendants attempt to defend it here but are unpersuasive. They maintain that Plaintiff's interpretation would result in an applicant accruing trips even before the applicant qualified for the Association's Coast Guard–approved training program. *See* Defs.' Mot. at 10–11; Intervenor Mem. at 14–15; 46 C.F.R. § 401.211(a)(1) (indicating that one must be an Applicant Pilot before being selected for training). As the Association puts it, "[i]t makes no sense to evaluate [an applicant's] performance until they have met the minimum familiarity and baseline skill requirements in order for training to begin." Intervenor Mem. at 14.

That may be wise policy, but that is not what the regulations say, and the text controls. Section 401.220(b), which lists the three requirements for pilot registration, separates the Minimum Trips Requirement and the training requirement. *Compare* 46 C.F.R. § 401.220(b)(1) (describing the Minimum Trips Requirement), *with id.* § 401.220(b)(2) (stating that a qualified pilot must have "completed a course of instruction for Applicant Pilots prescribed by the association"). Nowhere do the regulations state that an applicant must satisfy the Minimum Trips Requirement only *after* he begins his training—i.e., after he becomes an Applicant Pilot. Rather, they clearly state that the requisite qualifying trips must be made "within 1 year of the date of application." 46 C.F.R. § 401.220(b)(1). If the Coast Guard wanted to make Applicant Pilot status the starting point for accumulating qualifying trips under the Minimum Trips Requirement, it could have plainly written the regulations to say as much. But it didn't.

Thus, the court grants Plaintiff's motion for summary judgment as to Count II of his Complaint.

**B.   The Association's Recommendation**

Next up is Plaintiff's third cause of action. He asserts that the Coast Guard's alternative basis for denying his request to take the written examination—that he did not receive a positive

recommendation from the Association—is also premised on an incorrect reading of the controlling regulations.  *See* Pl.'s Mot. at 42–44 (addressing Count III).  Section 401.220(c) states that "[t]he Pilot Association authorized to establish a pool in which an Applicant Pilot has qualified for registration under paragraph (b) of this section shall submit to the Director in writing its recommendations together with its reasons for the registration of the Applicant."  46 C.F.R. § 401.220(c).  "[P]aragraph (b)" refers to 46 C.F.R. § 401.220(b), which contains the three requirements Applicant Pilots must meet before they may be registered, one of which is the written examination requirement.  *See id*. § 401.220(b)(3).  Section 401.220(d) then states that "[s]ubject to the provisions of paragraphs (a) [which is not at issue in this case], (b), and (c) of this section, a pilot found to be qualified under this subpart shall be issued a Certificate of Registration . . . ." *Id.* § 401.220(d).

Plaintiff seizes on the language of section 401.220(b)—that "[r]egistration of pilots shall be made from among those Applicant Pilots" who have satisfied the paragraph's three requirements—to argue that those requirements are all that is necessary for registration.  Pl.'s Mot. at 43.  Section 401.220(c), on the other hand, simply "is a mandate for the Association to submit 'its recommendation' and 'reasons.'"  *Id.*  "[U]nder [paragraph] (d), the Coast Guard is to consider those recommendations and reasons in deciding whether to issue a Certificate of Registration."  *Id.*  This reading of the regulations makes sense, Plaintiff contends, because the drafters "knew there might be situations where an applicant was worthy of registration but where his association wanted to prevent [registration] for unfair and arbitrary reasons."  *Id.*

The Federal Defendants' briefing does not grapple with this argument in any meaningful way.  In fact, they do not address the third claim at all.   In their opposition, the Federal Defendants assert that Plaintiff "does not appear to address directly [Count] III" and "[t]hus, he has arguably

withdrawn [the Count]." Defs.' Mot. at 12.  That is flatly incorrect.  Plaintiff unequivocally moved for judgment as to his third claim.  *See* Pl.'s Mot. at 42–44.  As a result, the court holds that, in not responding to Plaintiff's arguments on the matter, it is the Federal Defendants who have conceded Count III.

Perhaps realizing their mistake, the Federal Defendants argue in their reply brief that "[t]he Coast Guard's denial was not based on an interpretation of a regulation and was instead a matter of practicality."  Defs.' Reply in Supp. of Cross-Mot. for Summ. J., ECF No. 75 [hereinafter Defs.' Reply], at 5.  "The Director has always proctored the examination after having received the recommendation by the association that oversaw the applicant's training, and never beforehand."  *Id*. (quoting the Coast Guard's denial letter).  But that argument comes too late.  Courts "generally will not entertain arguments omitted from [a party's] opening brief and raised initially in [its] reply brief."  *McBride v. Merrell Dow & Pharm., Inc.*, 800 F.2d 1208, 1210 (D.C. Cir. 1986).  "Considering an argument advanced for the first time in a reply brief . . . is not only unfair to [the other party] . . . but also entails the risk of an improvident or ill-advised opinion on the legal issues tendered."  *Id.* at 1211 (cleaned up).  Because those concerns are alive here, the court does not consider the Federal Defendants' last-minute submission.

Nor is the Association permitted to pick up the Federal Defendants' slack.  Although the Association advocates the legal position that Plaintiff is "not . . . entitled to sit for the examination . . . without the Association's recommendation," Intervenor Mem. at 16, the court cannot affirm the Coast Guard's decision based on a regulatory interpretation not explicitly adopted by the agency, *see Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto Ins.*, 463 U.S. 29, 50 (1983) ("It is well-established that an agency's action must be upheld, if at all, on the basis articulated *by the agency itself*." (emphasis added)).  As noted, in these proceedings, the Federal Defendants take

13

the position (belatedly) that "[t]he Coast Guard's denial was not based on an interpretation of a regulation and was instead a matter of practicality." Defs.' Reply at 5. The Coast Guard articulated similar reasoning when denying Plaintiff's appeal. *See* A.R. at 4. The court cannot adopt an interpretation of the Coast Guard's regulations that the Coast Guard itself has not advanced.

Thus, essentially by default, the court grants Plaintiff's motion for summary judgment as to Count III of his Complaint. *See McBride*, 800 F.2d at 1210. To be clear, the Court does not resolve the actual question of whether under 46 C.F.R. § 401.220(c) an Applicant Pilot must be given the opportunity to pass the written examination before the Coast Guard can consider an association's recommendation. Nor does the court take a position on whether a positive recommendation from the relevant association is required before an Applicant Pilot can be fully registered by the Coast Guard. The court concludes only that, in this specific case, Plaintiff is entitled to summary judgment on Count III because the Federal Defendants failed to respond to his argument in a timely fashion.

### C.    Remedy

When, as here, an agency violates the APA, the ordinary remedy is to vacate the agency decision. *See Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs*, 985 F.3d 1032, 1050 (D.C. Cir. 2021). Accordingly, the court vacates the Coast Guard's denial of Plaintiff's request to sit for the District One pilotage examination. The Coast Guard shall administer the examination to Plaintiff.

Further proceedings or events may obviate the need for the court to consider Plaintiff's constitutional claims, so the court declines to consider them, *see Sohm v. Fowler*, 365 F.2d 915, 918 (D.C. Cir. 1966) (invoking "the fundamental doctrine that courts should avoid passing on

unnecessary constitutional questions," particularly when the claims are "far reaching" and "difficult"), or the remaining APA claim asserted in Count IV.[3]   Additionally, the court expresses no view on whether, if Plaintiff passes the pilotage examination, Plaintiff otherwise qualifies as a registered pilot for District One.[4]

## V.    CONCLUSION

For the reasons stated above, the court grants Plaintiff's motion for summary judgment as to Counts II and III and denies Federal Defendants' and the Association's motions for summary judgment as to those counts.   The court declines to reach Plaintiff's remaining claims.   The court also denies as moot Plaintiff's and the Association's motions for leave to file declarations in support of their cross-motions for summary judgment.   Furthermore, the court remands the case to the Coast Guard to administer the written examination to Plaintiff.   A separate Order accompanies this Memorandum Opinion.


Dated:   March 18, 2021

Amit P. Mehta
United States District Court Judge

---

[3] Like Plaintiff's constitutional claims, the remaining APA claim—which challenges the alleged requirement of membership in the Association to work as a registered pilot—only becomes ripe if Plaintiff passes the pilotage examination and otherwise qualifies as a registered pilot.   Reaching that claim is therefore premature at this junction.
[4] During the administrative appeal, the Association suggested that the round trips taken by Plaintiff after December 22, 2015, might not qualify toward the Minimum Trips Requirement because they "[did] not show the necessary evaluation required by [the Association's] training plan," but the Coast Guard ultimately did not resolve that issue. A.R. at 4.   The court takes no position on whether it would be appropriate for the Coast Guard to consider that issue in the future.